IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
AT MEMPHIS

| | |
|---|---|
| JANE DOE, | |
| Plaintiff, | |
| v. | No. 2:21-cv-02811- JTF-tmp |
| | JURY DEMANDED |
| RHODES COLLEGE, DAVID CADDLE, AMAKA MGBOH, AND RICHARD ADAMS, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT HER MOTION FOR INJUNCTIVE RELIEF**

Plaintiff Jane Doe ("Plaintiff"), by and through the undersigned counsel, applies to this Court for injunctive relief. For grounds, Plaintiff would respectfully show as follows:

### I.    STATEMENT OF THE CASE

Plaintiff seeks injunctive relief arising from Defendants' breach of contract between Plaintiff and Defendants. Plaintiff is a junior at Rhodes College in Memphis, Tennessee. On October 3, 2021, early in the morning, a Rhodes College student was shot and killed during a home invasion that occurred off campus. A Rhodes Campus Safety Alert was issued later in the evening describing the suspect as a 6'2" Black man. In response to the safety alert, Plaintiff sent a private text message to her former roommate, who lived off campus near where the home invasion occurred, that stated: "Imma be racist: If you see a black man in the next 24hrs near your house hit him with your car." The Rhodes Community Standards Council (CSC) charged Plaintiff with violating Rhodes College Standards for the text message. Plaintiff alleges that by not following

the procedural requirements outlined in the CSC Constitution, Defendants breached its contract with Plaintiff. In addition, Plaintiff alleges that Defendants violated her rights under the Tennessee Humans Right Act.

## II. LAW AND ANALYSIS

There are four factors a district court must consider when granting a temporary or preliminary injunction:

(1) Whether the movant as a strong likelihood of success on the merits;
(2) Whether the movant would suffer irreparable injury without the injunction;
(3) Whether issuance of the injunction would cause substantial harm to others; and
(4) Whether the public interest would be served by the issuance of the injunction.

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citing *Tumblebus Inc. v. Cranmer*, 399 F.2d 754, 760 (6th Cir. 2005)). In *Certified Restoration Dry Clean Network*, the court stated that "[t]he district judge 'is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.'" *Id.* (quoting *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003).

### A. Strong Likelihood of Success on the Merits

#### 1. Breach of Contract

Plaintiff has a strong likelihood of success on her claim of breach of contract. To succeed on a claim of breach of contract, Plaintiff must be able to prove that (1) there was an enforceable contract; (2) defendant breached the contract; and (3) the breach of the contract caused harm. *Atria v. Vanderbilt University*, 142 Fed. Appx. 246, 254 (6th Cir. 2005).

The Sixth Circuit, applying Tennessee law, has found that the student-college relationship is contractual in nature. *Id.* In *Atria*, the court stated that "Catalogs, manuals, handbooks,

2

bulletins, circulars and regulations of a university may help define this contractual relationship." *Id.* (citing *Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir. 1992)). Even where student handbooks have explicitly said that the policies do not create a contract, courts have found an implied contract is still present. *See id.* (finding that although Vanderbilt's student handbook said that it did not create a contract there was an implied contract); *Rice v. Belmont University*, No. M201801092COAR3CV, 2020 WL 2790457 (Tenn. Ct. App. May 29, 2020) (same). It is likely that because of the contractual nature of students and colleges, the Court will likely find that there is an enforceable contract between Plaintiff and Defendants, therefore meeting the first element of breach of contract.

Plaintiff is likely to prove the second element of breach of contract because of Defendants' violation of the Community Standards Council Constitutional procedures. Violating the procedures outlined in the CSC Constitution, Defendants did not provide a written list of hearing procedures; Defendants found Plaintiff responsible of charges she was not charged with; Defendants failed to give Plaintiff a fair opportunity to present evidence at the hearing; Defendants did not allow Plaintiff to be present throughout the entire hearing; and Defendants falsely informed Plaintiff that her Advisor would be an advocate. These actions, or lack thereof, taken by Defendants conflict with the procedures outlined by the CSC Constitution, thereby constituting a breach of contract. *See Atria*, 142 Fed. Appx. at 255 (finding that conflicting rules within the student handbook and appellate review board procedures constituted a genuine issue of material fact; finding also that the school's failure to allow plaintiff to present polygraph evidence constituted a genuine issue of material fact because the procedures allowed accused to present evidence and did not expressly prohibit presenting polygraph evidence); *see also Ritter v. Okla. City Univ.*, No. CIV-16-043-HE, 2016 U.S. Dist. LEXIS 60193, at *7 (W.D. Okla. May 6, 2016)

3

(finding that plaintiff proved a likelihood of success on the merits of his breach of contract claim because plaintiff "had no opportunity to challenge certain other damning conclusions [the Title IX Coordinator] apparently reached and relied on in recommending the penalty that was eventually imposed . . . .").

As a result of Defendants' breach of contract, Plaintiff suffered harm. Plaintiff's harm from the breach of contract arises from the fact that she was suspended for the Spring 2022 semester. Had Defendants conformed with its own procedural requirements, it is likely Plaintiff would not have been suspended. Because Plaintiff is likely to be able to prove all elements of breach of contract, there is a high likelihood of success on her breach of contract claim.

### 2. Violation of the Tennessee Human Rights Act

Plaintiff is likely to succeed on her claim for Defendants' violation of Tennessee Human Rights Act. Defendant Rhodes violated Tenn. Code. Ann. § 4-21-401(a)(1), (a)(4), and (a)(8) which are intended to protect Plaintiff's rights under the Civil Rights of 1964, 1968 and 1972, "protect her interest in personal dignity and freedom from humiliation" and "further the interests, rights, opportunities and privileges of individuals within the state."

There is a strong likelihood that Plaintiff will prevail on her claim for Defendant Rhodes' violation of the Tennessee Humans Rights Act because the decision to suspend Plaintiff was made by a student-led group which violated the procedures in their own constitution. Further, section (a)(4) of the Tennessee Human Rights Act is intended to protect an individual's "interest in personal dignity and freedom from humiliation." Defendant MgBoh's dissemination of Plaintiff's private text message to her former roommate is in direct violation of this.

### B. Irreparable Injury

Without the grant of the motion for preliminary injunction, Plaintiff would suffer irreparable harm. Irreparable harm is "a harm that a court would be unable to remedy even if the movant would prevail in the final adjudication, such as a harm that could not be compensated by calculable money damages." *Kendall Holdings, Ltd. V. Eden Cryogenics LLC*, 630 F. Supp. 2d 854, 866 (6th Cir. 2008) (internal citations omitted). The factors a court should consider when determining if irreparable harm is present are: "(1) the substantiality of the injury alleged, (2) the likelihood of its occurrence; and (3) the adequacy of proof provided." *State of Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n.*, 812 F.2d 288, 290 (6th Cir. 1987).

Courts have ruled that delay or interruption in a plaintiff's education constitutes irreparable harm. *See Doe v. Rhodes College*, No. 216CV02308JFTMP, 2016 WL 11611619, at *8 (W.D. Tenn. Oct. 25, 2016) (finding that irreparable injury existed because "[p]laintiff's alleged injury deprived her of an opportunity to continue her studies as well as potentially attend GWU for medical school. No monetary reward can compensate her for the time lost or the damage to her academic reputation."); *Marshall v. Ohio Univ.*, No. 2:15-CV-775, 2015 WL 1179955 (S.D. Ohio Mar. 13, 2015) (finding that denial of the temporary restraining order would cause plaintiff irreparable harm because "[h]is suspension effectively denied him the benefit of the work already performed in the classes this semester and delayed the completion of his degree" and "[p]laintiff will forever have this disciplinary action on his academic record, which may impact his ability to enroll at another institution, or affect his future career possibilities."); *Roe v. Dir., Miami Univ.*, No. 1:19-cv-136, 2019 U.S. Dist. LEXIS 55246, at *22-23 (S.D. Ohio April 1, 2019) (finding that because plaintiff was not subjected to an *unfair* hearing, suspension did not cause irreparable harm.).

Without injunctive relief Plaintiff will suffer immediate and irreparable harm from the final decision of the Community Standards Council to suspend her for the Spring 2022 semester. By being denied the opportunity to continue her education at her chosen institution, Plaintiff will not only be delayed in her education by a semester, but potentially longer. Plaintiff is planning to attend Veterinarian school following graduation. In order to be eligible to apply for Veterinarian school and graduate as a Biochemistry and Biomolecular Biology major in three semesters, with a suspension, Plaintiff would have to take six to seven science classes along with calculus, statistics, public speaking, and a Rhodes foundational course such as political studies or sociology. Rhodes only offers many of the upper-level biology science classes in the Spring semesters. Considering Plaintiff would only have one Spring semester remaining at Rhodes if her suspension was sustained, it would be nearly impossible for Plaintiff to take all of the required science classes and graduate on time. This would also require Plaintiff to take two to three science classes a semester out of the typical four-class semester. Plaintiff has had difficulty to even be able to take two required science classes in a single semester because of Rhodes' scheduling process and class sizes with limited number of sections and labs.

Plaintiff further would suffer irreparable harm without the grant of the motion for preliminary injunction because the suspension causes Plaintiff to lose two research opportunities. First, Plaintiff was on track to take part in a research opportunity at the Memphis Zoo doing field research on amphibians for credit in the Spring of 2022. Second, Plaintiff's application for a Summer 2022 field research trip to Namibia was rejected because of the disciplinary action. Plaintiff will not be able to resubmit her application before the program is filled and the deadline has passed, even though she is not suspended for Summer 2022. The Namibia research trip is only

offered every other Summer, meaning that this Summer is Plaintiffs only opportunity to go on the research trip.

Money damages cannot remedy the harm Plaintiff will suffer if the motion for preliminary injunction is denied. In *Doe v. Rhodes*, the court found that the defendant expelling plaintiff and defendant's interference with plaintiff's opportunity to attend medical school constituted irreparable harm. *See Doe v. Rhodes*, 2016 WL 11611619, at *8. Similarly, this Court should find that Plaintiff's suspension, which will affect her future education and career, constitutes irreparable harm.

### C. Plaintiff's Harm Outweighs the Injury to Others

Plaintiff's harm in the suspension outweighs the potential injury to others. In *Ritter*, the court found that where the plaintiff's loss of "educational and career opportunities" constituted irreparable harm, "[t]hat harm . . . outweighs the burden imposed on [defendant] by the issuance of an injunction — the grading of a test and master's thesis. While the latter is not a small task, it is inconsiderable in comparison to the threatened injury to plaintiff if we were wrongfully expelled." 2016 U.S. Dist. LEXIS 60193, at *8. The burden on Rhodes, which would be to stay Plaintiff's suspension until an outcome of the lawsuit, would be small in comparison to the harm Plaintiff would sustain if she were suspended from the Spring 2022 semester.

### D. The Public Interest

The public interest factor weighs in favor of granting the motion for preliminary injunction. The court in *Ritter* found that "it is always in the public's interest that a student be treated fairly before being disciplined." 2016 U.S. Dist. LEXIS 60193, at *8. Here, Plaintiff was not treated fairly before being disciplined as she was not afforded rights guaranteed to her by the CSC Constitution. This factor does not weigh in favor of Defendants merely because public policy

7

favors taking seriously issues of community standards. In *Ritter* "[t]he court recognizes colleges must take seriously allegations of sexual assault. It also recognizes that handling claims of sexual misconduct presents sensitive and difficult issues. Nonetheless, universities must ensure that the rights of both the accused and the accuser are protected." 2016 U.S. Dist. LEXIS 60193, at *8-9. Defendants' failure to protect the rights of the accused makes the public interest factor weigh in favor of Plaintiff to ensure protection of the rights of the accused.

### III.  CONCLUSION

The balancing factors a court should consider in determining whether a temporary or preliminary injunction should be granted weigh in favor of the Plaintiff. Without an injunction, Plaintiff would suffer harm that could not be remedied by money damages.

Respectfully submitted,

APPERSON CRUMP, PLC

/s/Bruce S. Kramer
Bruce S. Kramer (#7472)
Jacob Webster Brown (# 36404)
6000 Poplar Avenue, Suite 150
Memphis, Tennessee 38119
Telephone: (901) 756-6300
bkramer@appersoncrump.com
jbrown@appersoncrump.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this Memorandum has been served upon Lisa Krupicka and Charles Newman, Burch Porter & Johnson, 130 North Court Avenue (LKrupicka@bpjlaw.com and Cnewman@bpjlaw.com on this ~~29th~~ *13th* day of ~~December, 2021~~: *January 2022*

/s/Bruce S. Kramer
Bruce S. Kramer