IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE AT MEMPHIS

KENDALL FOREMAN,

    Plaintiff,

v.                                                       No. 2:21-cv-02811-JTF-tmp

RHODES COLLEGE,
DAVID CADDLE, AMAKA MGBOH,
AND RICHARD ADAMS,

    Defendants.

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM

Defendants Rhodes College ("Rhodes") and Richard Adams, David Caddle, and Amaka MgBoh (collectively the "Individual Defendants"), by and through undersigned counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully move the Court to dismiss Plaintiff's Complaint for failure to state a claim for which relief may be granted. In support of their motion, the Defendants state as follows[1]:

### INTRODUCTION

In her Complaint, Plaintiff (also referred to as "Ms. Foreman") admits that, in the immediate aftermath of the brutal murder of a fellow student and the identification of a black suspect, she made a statement that she herself characterized as racist in which she advised a black

---

[1] Rhodes incorporates here by reference its separately filed Response in Opposition to Plaintiff's Application for a Temporary Restraining Order and/or Motion for Preliminary Injunction, (ECF No. 19); and Rhodes College's Sealed Supplemental Brief in Opposition to Plaintiff's Motion for Preliminary Injunction, (ECF No. 27); and Rhodes College's Second Supplemental Brief in Opposition to Plaintiff's Motion for Preliminary Injunction (ECF No. 37).

student to hit the next black man she saw in her neighborhood with her car. Rhodes determined, through the Community Standards Council ("CSC"), that Plaintiff's statement violated Rhodes' Community Standards and imposed discipline that included a one-semester suspension.

Prior to instituting this action, Plaintiff appealed her case to the Community Standards' Appeals Committee which, finding procedural irregularities, returned Plaintiff's case to the CSC to reconsider its disciplinary decision in light the Committee's findings. Following re-deliberations, the CSC affirmed its decision.

In her Complaint, Ms. Foreman alleges no error in the appellate process by which her procedural concerns were addressed, but rather asserts claims for breach of contract, violation of the Tennessee Human Rights Act, negligence, gross negligence, negligent training and supervision, fraudulent misrepresentation, promissory fraud, false light invasion of privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress, all based on certain alleged procedural irregularities occurring **prior to and cured by** the appellate process conducted by the Appeals Committee.[2] As set forth herein, the Complaint fails to articulate a colorable basis for relief against Rhodes and the Individual Defendants, warranting dismissal of the Complaint in its entirety.

## RELEVANT FACTUAL ALLEGATIONS

The following factual allegations are recited in the Complaint and admitted as true only for purposes of this motion:

On October 3, 2021, Plaintiff received a Campus Safety Alert, describing the suspect in a fatal off-campus shooting of a Rhodes student as a "6'2'' Black man." (Compl. ¶ 12, ECF No. 1

---

[2] Ms. Foreman's Complaint also seeks injunctive relief, apparently based on the breach of contract claim only. Such relief is being addressed by the Court in a separate proceeding.

2

at PageID 3). Reacting to this alert, Plaintiff sent a text message to her former roommate, stating: "Imma be racist: If you see a black man in the next 24hrs near your house hit him with your car." (*Id.* at ¶ 15). The former roommate then sent a screenshot of Plaintiff's message to Defendant Amaka MgBoh, another Rhodes student who was also a "Resident Advisor," asking Ms. MgBoh for advice on how to respond. (*Id.* at ¶ 16, ECF No. 1 at PageID 4). In a message to Plaintiff about the text sent to her former roommate, Ms. MgBoh said: "You racist af for what you texted brit. Fuck you." (*Id.* at ¶ 17). Plaintiff apologized to Ms. MgBoh for her words, noting in part: "[T]he way I phrased what I said was racist and I should have thought more before I sent it. …" (*Id.* at ¶ 18). Ms. MgBoh shared the screenshot of Plaintiff's message on Snapchat and in private messages with "several of MgBoh's friends" but not the apology Plaintiff directly messaged Ms. MgBoh. (*Id.* at ¶¶ 21-22, ECF No. 1 at PageID 4-5). Plaintiff received several "harassing" text messages in response to Ms. MgBoh's post, compelling Plaintiff to post a public apology to her Instagram account, again acknowledging that her words were "a blatant display of racism" harming the Rhodes community. (*Id.* at ¶¶ 24, 27, ECF No. 1 at PageID 5). Students aware of Plaintiff's text message filed reports with Rhodes' Bias Education Reporting System ("BERS") regarding Plaintiff's text. (*Id.* at ¶¶ 23, 25).

On October 13, 2021, David Caddle, Rhodes' CSC President, informed Plaintiff that she was under investigation for alleged violations of Rhodes' Standards of Conduct. (*Id.* at ¶30, ECF No. 1 at PageID 6). Plaintiff was informed that the student advisor she selected would serve as her "advocate" during the CSC proceedings. (*Id.*). Plaintiff claims that the use of the word "advocate" is contrary to the CSC Constitution, which states that the advisor does not represent an accused student. (*Id.* at ¶ 31). Ms. Foreman was told by her advisor that she had a right to legal counsel but, in response to Ms. Foreman's question, "Do I need legal counsel?" responded "no" because

3

the case did not involve physical violence, sexual assault or destruction of property. (*Id.* at ¶ 33.). Plaintiff met with the CSC investigator but was not told that this interview would be the only chance to discuss the incident and provide all evidence. (*Id.* at ¶ 34).

On November 15, 2021, Plaintiff was notified of the following charges:

"Endangering, threatening, or causing physical harm to any person, or causing reasonable apprehension of physical harm."

"Engaging in intimidation, harassment, coercion, verbal abuse and/or other conduct that threatens or endangers the health or safety of any person."

"Interfering with the freedom of expression of others —Inhibiting the ability of students to comfortably contribute and interact with the community."

(*Id.* at ¶ 38, ECF No. 1 at PageID 7-8). Omitted from the representations of Ms. Foreman's advisor regarding the hearing procedure was the requirement that Plaintiff enter a plea of "responsible" or "not responsible" to each of these charges. (*Id.* at ¶ 39).

The CSC hearing took place on November 18, 2021. (*Id.* at ¶ 39, ECF No. 1 at PageID 8). During the hearing, Defendant Caddle barred Plaintiff from presenting evidence to support her case. (*Id.* at ¶ 40). Plaintiff was not allowed to hear her accusers' testimonies, and the accusers testified together. (*Id.* at ¶¶ 43-46). At the conclusion of the proceeding, Plaintiff was found responsible for the first and second charges. (*Id.* at ¶ 50, ECF No. 1 at PageID 9). As result of the CSC's findings, Plaintiff was suspended for the Spring 2022 semester. (*Id.* at ¶ 51). After delivering the decision, members of the CSC, including her advisor, left the building, leaving Plaintiff alone, "hysterical and hyperventilating." (*Id.* at ¶ 52). She remained on the phone with her parents in the building for two hours, even after the lights in the building were turned off. (*Id.*).

The following day, November 19, 2021, Mr. Adams called Plaintiff to discuss the post-hearing process, including her right to appeal and the process therefore. (*Id.* at ¶ 53, ECF No. 1 at PageID 9). The procedure he outlined, however, was incorrect. (*Id.*). Mr. Adams informed

Plaintiff and her parents of the correct procedure on November 23, 2021, during a meeting in which Plaintiff received the preliminary, written decision of the CSC. (*Id.* at ¶ 55 ECF No. 1 at PageID 10). This letter was revised on November 26, 2021 to note that Plaintiff was eligible to return to Rhodes in the summer of 2022 rather than the following fall. (*Id.* at ¶ 54). The charges outlined in the November 26, 2021 letter differed from the charges she received notice of on November 15, 2021. (*Id.* at ¶ 11).

Plaintiff appealed the CSC decision. (*Id.* at ¶ 58-62, ECF No. 1 at PageID 11-12). The Appeals Committee, made up of the Dean of Students, the President of the Honor Council, and the Dean of Faculty and Recruitment, Development, and Diversity, met on December 13, 2021 and allowed Plaintiff to "present the evidence she was previously barred from presenting to the Council." (*Id.* at ¶ 60, ECF No. 1 at PageID 11). The Committee cannot modify, overturn or vacate the CSC's decision or sanction. (*Id.* at ¶ 61). The Committee can return a decision to the CSC for reconsideration. (*Id.*). The Committee found that the original CSC hearing was "not conducted fairly in light of the charges" and failed to conform with "prescribed procedures." (*Id.* at ¶ 62, ECF No. 1 at PageID 12). The Committee recommended that the CSC reconsider its decision and sanction in light of the Committee's appellate findings. (*Id.*). The CSC reconvened on December 15, 2021 and upon re-deliberation, voted to uphold its previous decision and sanction. (*Id.* at ¶ 63, ECF No. 1 at PageID 12). This action followed.

## **STANDARD OF REVIEW**

The Complaint "must contain sufficient factual matters, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions "must be supported by factual allegations." *Id*. "[L]abels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## LAW AND ANALYSIS

Plaintiff fails to plead facts from which a reasonable jury could conclude that Defendants breached any duty owed by them, either a contractual one or one imposed by law. As an initial matter, Plaintiff's claims sound in contract. This point is underscored by Plaintiff's failure to identify an articulable duty or injury sufficient to state a claim in tort. Where the absence of a duty causes Plaintiff's tort claims to fail, the absence of a material breach is fatal to her contract claim. Similarly, Plaintiff's claim against Rhodes for violations of the Tennessee Human Rights Act ("THRA") fails on its face, as Plaintiff has not and cannot plead discrimination based on a class protected by the Act. Her claims for fraud do not allege reasonable reliance, and her claim for intentional infliction of emotional distress is not supported by allegations of "outrageous conduct" as required by Tennessee law. Because the facts as set forth in the Complaint do not give rise to a claim for which relief may be accorded, the Complaint should be dismissed in its entirety.

### I. Plaintiff Fails to Articulate an Actionable Breach of the Implied Contract Between Plaintiff and Rhodes.

Plaintiff's breach of contract claim is analyzed under Tennessee law, which requires she sufficiently plead "the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). The parties agree that the relationship between Plaintiff and Rhodes is contractual in nature and that the CSC Constitution, at least in part, outlines its terms. *See Rice v. Belmont Univ.,* 2020 WL 2790457, at *2 (Tenn. Ct. App. May 29, 2020) (noting that a Tennessee Court would find an implied contract between a university and a student). Although the student-university relationship is contractual in nature, "courts have rejected a rigid application of

6

contract law in this area." *Doherty v. Southern College of Optometry*¸ 862 F.2d 570, 577 (6th Cir. 1988). Rather, the standard for breach is whether "whether an educational institution '**substantially complied**' with its own procedures or rules." *Bose v. De La Salud Bea*, 2018 WL 8919932, at *7 (W.D. Tenn. Feb. 27, 2018) (Fowlkes, J.) (citing *Anderson v. Vanderbilt Univ.*, 450 F. App'x 500, 502 (6th Cir. 2011)). College and university handbooks "have unique qualities and must be construed to allow the [college's] governing body to meet its educational and doctrinal responsibilities." *Doe v. Vanderbilt Univ.*, 2019 WL 4748310, at *11-12 (M.D. Tenn. Sept. 30, 2019) (quoting *Sifuna v. S. Coll. of Tenn., Inc.*, 2018 WL 3005814, at *2 (6th Cir. Apr. 5, 2018) and *Valente v. Univ. of Dayton*, 438 F. App'x 381, 384 (6th Cir. 2011)). "Courts must additionally remain mindful that a college or university's disciplinary committee is entitled to a presumption of honesty and integrity." *Bose*, 2018 WL 8919932, at *7. "It is not the role of the federal courts to set aside decisions of school administrators just because the court might view them as lacking in wisdom or compassion." *Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 755 (6th Cir. 2019) (internal quotations omitted).

The issue at bar is whether Ms. Foreman has sufficiently pled a breach of the implied agreement between her and Rhodes and if so, what damages she suffered as a result thereof. Plaintiff pleads that the pre-hearing and disciplinary hearing procedures violated the CSC Constitution amounting to a breach of the implied agreement between her and Rhodes in the following ways:

1. Failing to provide Ms. Foreman with a written list of hearing procedures. (Compl. ¶ 71, ECF No. 1 at PageID 15);

2. Finding Plaintiff responsible for charges she was not charged with in the charge letter. (*Id.*);

3. Failing to give Plaintiff a fair opportunity to present evidence at the hearing. (*Id*. at PageID 16);

7

    4. Failing to sequester the witnesses at the hearing from each other. (*Id.*);

    5. Denying Plaintiff the opportunity to hear all evidence against her. (*Id.*); and

    6. Informing Plaintiff that her advisor would be an "advocate." (*Id.* at ¶ 72, PageID16-17).

Citing these procedural errors, Plaintiff appealed the CSC discipline and sanction to the Appeals Committee, which held a hearing, during which Ms. Foreman "was permitted to present the evidence she was previously barred from presenting to the Council." (*Id.* at ¶ 60, PageID 11). She also states that the Appeals Committee found that "the actions of the Council could reasonably be considered in conflict with Section 5.B.1 [of the CSC Constitution] (the provision that the original hearing was conducted 'fairly in light of the charges, and in conformity with prescribed procedures)'" and remanded the case to the CSC for reconsideration. (*Id.* at ¶ 62, PageID 12). Absent from the Complaint is any allegation that the appellate process deviated from established procedure; resulted in an arbitrary ruling, was unsupported by the submitted proof; or was otherwise inadequate to address the procedural deficiencies identified for appellate review.

Ms. Foreman notes that the CSC "reconvened on December 15, 2021, without the presence of Plaintiff, and upheld its previous decision and sanction." (*Id.* at ¶ 63, PageID 12). The CSC Constitution does not entitle Plaintiff to participate in the deliberations of the reconvened CSC and though Plaintiff pleads she was not allowed to participate in these deliberations, she also does not suggest she was entitled to. (*Id.*).

There being no alleged error in the CSC appellate proceedings, there is not a plausible claim that Rhodes did not substantially comply with its own procedures in addressing procedural deficiencies in the November 18th, 2021 proceeding through its appellate process, thus warranting dismissal of Plaintiff's breach of contract claim.

## II. Plaintiff Fails to Identify a Duty of Care or a Breach Thereof Sufficient to Establish a Tort Claim Against Any Defendant.

Plaintiff pleads a scattershot of tort claims, all based on the same facts relied on to establish her breach of contract claim. Under the "Negligence Count," Plaintiff focuses on the actions of Defendants Adams and Caddle and the breach of their alleged duty to "know and uphold the CSC Constitution and procedures." (*Id.* at ¶ 86, ECF No. 1 at PageID 20). Plaintiff pleads that these actions also constitute gross negligence on the part of these same Defendants, for which she pleads a separate claim for relief. (*Id.* at ¶ 87). Plaintiff further asserts that Rhodes was negligent in the training and supervision of all the Individual Defendants and of members of the CSC. (*Id.* at ¶ 89, ECF No. 1 at PageID 21). Finally, Plaintiff pleads that Rhodes and Ms. MgBoh tortiously painted Plaintiff in a false light and invaded her privacy by posting "partial, misleading screenshots [of Plaintiff's racist statement] and her own commentary on social media." (Compl. ¶ 91, ECF No. 1 at PageID 22).

As a result of the alleged negligence and the intentional conduct purportedly painting Plaintiff in a false light, Plaintiff claims to have suffered an unspecified "grievous injury" which includes emotional distress. (*Id.*). As set forth herein, Plaintiff's failure to identify an actionable duty of care breached by any of the Defendants, one separate and apart from Rhodes' contractual duty under the implied agreement, is fatal to Plaintiff's negligence claims. Plaintiff's false light invasion of privacy claim fails because Plaintiff has not and, moreover, cannot plead the publication of a seriously offensive misstatement to substantiate her claim.

### A.     Negligence and Gross Negligence

Under Tennessee law negligence and gross negligence include the same five elements:

> (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care that amounts to a breach of

9

> that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation.

*Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 763 (M.D. Tenn. 2019). Gross negligence involves the added element of conduct "done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." *Id.* Yet, "where the alleged 'breach of duty' … is a breach of contractual obligations, regardless of whether the defendant was negligent in attempting performance, the action remains in contract." *Id.* (citing at length to relevant Tennessee case law).

Explaining the limitations of a contractual duty, the Tennessee Court of Appeals in *Belmont* cited a series of cases applying Tennessee law, all of which refuse to recognize a duty in tort that arises in contract:

- *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n*, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992) (dismissing negligence claims because alleged damages arose from breach of contractual relationship and stating "the alleged claim for negligence sounds in contract, and dismissal was proper");
- *Harvest Corp. v. Ernst & Whinney*, 610 S.W.2d 727, 728 (Tenn. Ct. App. 1980) ("[I]t matters not a whit whether the breach was an intentional one or an unintentional one caused by negligence in attempting to perform. The action still remains in contract.");
- *America's Collectibles Network, Inc. v. Sterling Commerce (America), Inc.*, Case No. 3:09-cv-143, 2016 WL 9132294, at *19 (E.D. Tenn. Sept. 7, 2016) ("Under Tennessee law . . . [w]here the only duty alleged arises from a contractual obligation, its breach cannot form the basis of a parallel negligence claim.");
- *Williams v. SunTrust Mort., Inc.*, No. 3:12-CV-477, 2013 WL 1209623, at *4 (E.D. Tenn. Mar. 25, 2013) ("[W]hen two parties enter into a contractual agreement, their obligations to each other arise out of the contract itself, so

> that a violation of the contractual duty supports an action in contract rather than in tort.")
>
> - *Permobil, Inc. v. Am. Express Travel Related Servs., Inc*., 571 F.Supp.2d 825, 842 (M.D. Tenn. 2008) ("[I]f the only source of duty between a particular plaintiff and defendant is their contract with each other, then a breach of that duty, without more, ordinarily will not support a negligence action.").

*Belmont*, 367 F. Supp. 3d at 763. "Thus, where a claim for negligence is based only on breach of contract obligations, and there are no alleged extra-contractual duties, 'the first element of the tort claim fails.'" *Id.* (quoting *Silvestro v. Bank of Am., N.A.*, 2013 WL 1149301, at *4 (M.D. Tenn. Mar. 19, 2013)). The only source of the alleged duty owed Plaintiff by Defendants Adams and Caddle is the CSC Constitution. Plaintiff pleads that Defendants Adams and Caddle had a duty to "know and uphold the CSC Constitution and procedures[,]" presumably in their respective professional and elected capacities. (*Id.* at ¶ 86, ECF No. 1 at PageID 20). Plaintiff pleads no facts from which the Court could conclude that either Mr. Adams or Mr. Caddle assumed a duty independent of Rhodes' contract with Plaintiff or even as a result thereof. Neither of these defendants is party to an agreement with Ms. Foreman, nor does the implied agreement between Rhodes and Plaintiff create a duty to Plaintiff on the part of these Defendants. As such, Plaintiff's negligence claims fail as a matter of law.

### B. Negligent Training and Supervision

Plaintiff's negligent training and supervision claims against Rhodes focus on the actions of Defendants Adams, Caddle and MgBoh specifically, but suggest that all members of the CSC were improperly trained as they, along with the named Defendants, "allowed an entire trial, appeal, and suspension to occur without proper training or supervision." (Compl. ¶ 89, ECF No. 1 at PageID 21). "Under Tennessee law, a negligent training or supervision claim may be maintained by

11

establishing the elements of a negligence claim, plus the additional element that the employer had knowledge of the employee's unfitness for the job." *See Belmont*, 367 F. Supp. 3d at 767.

Plaintiff's negligent training and supervision claim contains nothing but the conclusory allegation that Mr. Adams, Ms. Mgboh, Mr. Caddle and the members of the CSC were not properly trained or supervised by Rhodes. Legal conclusions without supporting facts cannot survive a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

Ms. Foreman's negligent training and supervision claim must also be dismissed because it does nothing more than parrot her breach of contract claim, as the alleged duty of care is wholly based on Rhodes' contractual duty to enforce the CSC Constitution. As discussed, Tennessee does not recognize an action in tort where the alleged duty is based in contract. *Belmont*, 367 F.Supp.3d at 764 (noting that student plaintiff failed to state negligence and gross negligence claims where claims where wholly dependent on the student handbook, thus sounding in contract).

In the absence of a properly pleaded claim and a duty independent of Rhodes' contractual obligations, Plaintiff's negligent training and supervision claim also fails and should be dismissed.

### C. Intentional Infliction of Emotional Distress

A Tennessee plaintiff must plead the following elements of an IIED claim: (1) intentional or reckless conduct; (2) conduct so outrageous that it is not tolerated by civilized society; and (3) conduct resulting in serious mental injury. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). "To say that Tennessee courts narrowly define 'outrageous conduct' would be something of an understatement." *Belmont Univ.*, 334 F.Supp.3d at 903. The conduct must be "atrocious," "utterly intolerable," and "beyond all bounds of decency." *Goldfarb v. Baker*, 547 S.W.2d 567, 569 (Tenn. 1977). In addition, Tennessee courts have limited recovery for IIED to mental injury that "is so severe that no reasonable person would be expected to endure it." *Arnett v. Domino's Pizza I, LLC*,

124 S.W.3d 529, 540 (Tenn. Ct. App. 2003). Recovery should be only for "serious or severe emotional injuries which disable a reasonable, normally constituted person from coping adequately with the stress." *Ramsey v. Beavers*, 931 S.W.2d 527, 532 (Tenn. 1996).

From the Complaint, it is unclear what particular actions of the Defendants form the basis for Ms. Foreman's claim, but there is nothing pled in the Complaint that comes even remotely close to conduct that is "atrocious," "utterly intolerable" or "beyond all bounds of decency." This claim should therefore be dismissed.

### D. Negligent Infliction of Emotional Distress

In order to state a claim for negligent infliction of emotional distress, Ms. Foreman must allege the usual elements of a negligence claim – duty, breach of duty, injury or loss, causation in fact, and proximate, or legal cause – as well satisfy the "serious or severe" mental injury requirement of an IIED claim. *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 206 (Tenn. 2012) ("Although this case involves the tort of intentional infliction of emotional distress, our analysis would be the same if it were for negligent infliction of emotional distress because both torts require proof of serious or severe mental injury."). In *Rogers*, the Tennessee Supreme Court noted that "there should be no recovery for fright or fear alone or hurt feelings, trivial upsets, or temporary discomfort." *Id.* (internal quotations omitted).

In support of her negligent infliction of emotional distress claim, Plaintiff pleads that Defendants Caddle and Rhodes "had a duty to ensure Plaintiff's safety" and breached this duty by leaving her alone in a school building with the lights off at 11:00 p.m. when she was "already hysterical from the news she just received." (*Id.* at ¶ 93). As with Plaintiff's other negligence claims, Plaintiff's NIED claim lacks an articulable duty of care independent of Rhodes' implied

contract with Plaintiff. Nor can leaving a building while an adult is talking on the phone with her parents for so long that lights are eventually turned out amount to circumstances that "a reasonable person, normally constituted, would be unable to adequately cope with" even if Plaintiff was "hysterical" over being suspended. Accordingly, Plaintiff's negligent infliction of emotional distress claim should be dismissed.

### E. False Light Invasion of Privacy

Plaintiff claims that Defendant MgBoh and Rhodes, as Ms. MgBoh's employer, committed the tort of false light invasion of privacy when Ms. MgBoh "posted partial, misleading screenshots [of Plaintiff's racist statement] and her own commentary on social media." (Compl. ¶ 91, ECF No. 1 at PageID 22). To state a claim for false light and invasion of privacy, Plaintiff must establish the publication of "a matter … that places … [her] before the public in a false light" and is: "(a) … highly offensive to a reasonable person, and done (b) [with] … knowledge of or ... reckless disregard as to the falsity of the publicized matter and the false light in which [she] would be placed." *West v. Media Gen. Convergence, Inc*., 53 S.W.3d 640, 644 (Tenn. 2001) (recognizing false light as an actionable tort and adopting the Restatement (Second) of Torts definition of false light). Only "seriously offensive **misstatements**" are actionable. *Loftis v. Rayburn*, 2018 WL 1895842, at *7 (Tenn. Ct. App. Apr. 20, 2018) (emphasis added).

Even assuming an agency relationship between MgBoh and Rhodes sufficient to confer vicarious liability under a *respondeat superior* theory, which Plaintiff does not sufficiently allege,[3] Plaintiff's false light claim still fails. First, that the statement shared is attributable to Plaintiff is not disputed. Second, Ms. MgBoh shared the entirety (in fact, a screenshot) of Plaintiff's statement

---

[3] Other than identifying Ms. Mgboh as a "Resident Advisor" employed by Rhodes, Ms. Foreman has failed to plead any facts to suggest that she was acting in her official capacity as a Rhodes employee, rather than a fellow student, at any time.

14

to her former roommate, absent only Plaintiff's apology to Ms. MgBoh. That Plaintiff later apologized for her admittedly racist statement does not make the statement shared false or misleading for the purposes of establishing a false light claim. Indeed, Plaintiff's apology suggests the statement stands alone as an act for which an apology, in Plaintiff's estimation, was warranted. Finally, though the statement is highly offensive, which Plaintiff freely acknowledges, it is a proposition that does not lend itself to truth or falsity. The statement shared does not place Plaintiff in a false light simply because it expresses in Plaintiff's own words the very conclusion she fears will be drawn against her: "Imma be racist." Plaintiff's false light invasion of privacy claim therefore fails as a matter of law for want of publication of a misstatement.

### III.     Plaintiff Fails to State a Claim Under the Tennessee Human Rights Act

Plaintiff's THRA claim fails on its face. Plaintiff cites exclusively to Tennessee Code Annotated § 4-21-101, the Purpose of the Act, cherry picking language from this section in an ill-advised attempt to define her own cause of action under the statute. As set forth in Tennessee Code Annotated § 4-21-101(a)(1), the THRA extends protection to the classes of persons covered by the following federal civil rights legislation: the Civil Rights Acts of 1964 (prohibiting employment discrimination on the basis of race, color, religion, sex or national origin), 1968 (a.k.a. the Fair Housing Act, prohibiting discrimination concerning the sale, rental, or financing of housing based on race, religion, national origin, and sex) and 1972 (prohibiting discrimination on the basis of pregnancy, sexual orientation, and gender identity in any education program or activity receiving federal financial assistance); the Pregnancy Amendment of 1978 (42 U.S.C. § 2000e(k)); and the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 *et seq*.). To the extent Plaintiff claims discrimination based on her ADHD diagnosis, "there is no separate claim of disability

discrimination under the THRA." *Whited v. Cmty Bank of the Cumberlands, Inc.*, 2010 WL 605280, at *8 (M.D. Tenn. Feb. 18, 2010).

It is Plaintiff's burden to establish a prima facie case of discrimination to succeed on a claim under the THRA, yet Plaintiff makes no allegations of discrimination whatsoever—on a protected basis or otherwise. *See* Tenn. Code Ann. § 4-21-311(3) ("In any civil cause of action alleging a violation of this chapter or of § 8-50-103, the plaintiff shall have the burden of establishing a prima facie case of intentional discrimination or retaliation."); *Harper v. BP Exploration & Oil Co.*¸896 F. Supp. 743, 747 (M.D. Tenn. Aug. 23, 1995) (the THRA addresses discrimination in the same fashion as claims under the Civil Rights Acts); *see also Sneed v. City of Red Bank, Tenn.*, 459 S.W.3d 17, 26 (Tenn. 2014) (summarizing that the THRA provides for execution of discrimination claims that are coextensive with the federal Civil Rights Act of 1964, 1968 and 1972, in addition to the Age Discrimination in Employment Act of 1967). Nor does she plead facts that allege any purported discrimination was "in connection with employment and public accommodation." Tenn. Code Ann. § 4-21-101(a)(3). Instead, Plaintiff alleges that Rhodes is in "direct violation" of § 4-21-101(a):

> (1) Provide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968 and 1972, the Pregnancy Amendment of 1978 (42 U.S.C. § 2000e(k)), and the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 et seq.);
>
> (4) Protect their interest in personal dignity and freedom from humiliation;
>
> (8) Further the interest, rights, opportunities and privileges of individuals within the state.

Plaintiff pleads that the forgoing "provisions" of the Act were violated during Plaintiff's disciplinary proceedings, but fails to identify the protected class upon which the alleged discrimination occurred (sex, race, color, religion, national origin, *etc*.) or that any purported

discrimination was "in connection with employment and public accommodations." Instead, Plaintiff claims:

> 75. Defendant is inhibiting Plaintiff's interests, rights, opportunities, and privileges by supporting a decision to suspend her for the Spring 2022 semester.
>
> 76. This weighty and consequential decision was made by a student-led group, which violated the procedures set forth in its own constitution, and the members of the Council were not properly trained or supervised by Rhodes College to make such consequential decisions.
>
> 77. Despite the Appeals Committee acknowledging the extraordinary procedural flaws during Plaintiff's trial, the Council upheld its decision to suspend Plaintiff.
>
> 78. By suspending Plaintiff for a semester, regardless of her stellar academic performance, Defendant Rhodes is removing her right to earn a four-year degree and graduate with her class, has caused Plaintiff to lose her scholarship, has caused her emotion pain and suffering, has damaged her reputation, violated her right of privacy by informing her professor of the discipline suspension, although the process was to be confidential.
>
> 79. Defendant MgBoh's text is in direct violation of T.C.A 4-21-101(a)(4) which is intended to protect individual's "interest in personal dignity and freedom from humiliation." MgBoh's actions constitute cyberbullying, placed Plaintiff in a False Light endangering her by labeling Plaintiff as a racist, and harming her reputation.
>
> 80. Defendant MgBoh violated Plaintiff's personal dignity by posting screenshots of private text messages between Plaintiff and her former roommate. Defendant MgBoh, however, failed to post Plaintiff's explanation and apology.
>
> 81. By posting these private texts, MgBoh invited fellow classmates to criticize, harass, and ostracize Plaintiff and put her in fear and jeopardy of harm.
>
> 82. Defendant MgBoh is employed by Defendant Rhodes as a Resident Advisor, and used her platform to cyberbully another student.
>
> 83. By disseminating partial screenshots of Plaintiff's private text messages, which resulted in the harassment, charges and suspension, Defendant MgBoh violated Plaintiff's personal dignity and right to be free from humiliation.

(Compl. ¶ 18, ECF No. 1 at PageID 4). The foregoing allegations fail to amount to a viable cause of action against Rhodes in any capacity, but specifically under the THRA. None of the allegations

amount to intentional discrimination on a protected basis. Finally, to the extent Plaintiff is asserting a THRA claim against Defendant MgBoh, there is no individual liability under the THRA. *See, e.g. Bowles v. Heath Consultants, Inc.*, 2017 WL 1026017, at *2 (W.D. Tenn. Mar. 16, 2017). In the absence of such necessary allegations, Plaintiff fails to establish a prima facie case of discrimination in violation of the THRA, warranting dismissal of her claim.

### IV. Plaintiff's Fraud Claims Against Defendant Caddle Fail for Lack of Reasonable Reliance.

#### A. Promissory Fraud

Plaintiff claims that Defendant Caddle falsely promised Ms. Foreman that her advisor was to serve as her "advocate." (Compl. ¶ 88, ECF No. 1 at PageID 20). Plaintiff claims that she relied on this statement by "entrusting her advisor and not obtaining legal counsel." (*Id*.). A claim for promissory fraud has three elements: (1) a promise which the promisor should reasonably have expected to induce the action or forbearance of the promisee; (2) the promise does induce that action or forbearance; and (3) injustice can be avoided only by enforcing the promise. *Z.J. v. Vanderbilt University*, 355 F.Supp.3d at 646, 701 (M.D. Tenn. 2018). So in order to state a claim for promissory fraud, this Court would have to find that it is reasonable for Mr. Caddle to have expected that, by using the word "advocate," Ms. Foreman would believe that her student advisor was to act as her lawyer and so would forbear from retaining an actual lawyer in reliance on his statement. Wholly aside from the flawed argument that "advocate" is always construed as a synonym for "lawyer," no jury could reasonably find that Plaintiff mistook a fellow student for a lawyer; this claim therefore should be dismissed.

### B. Fraudulent Misrepresentation

Plaintiff's fraudulent misrepresentation claim against Defendant Caddle also fails for want of reasonable reliance on an intentional or reckless misrepresentation. Plaintiff must establish the following elements of her fraudulent misrepresentation claim:

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*Metro. Gov't of Nashville and Davidson County v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992). Plaintiff's misrepresentation claim does not rely on any statement from Defendant Caddle to the Plaintiff. Instead, Plaintiff pleads that certain of Mr. Caddle's representations to the Appeals Committee regarding the disciplinary hearing were false. She claims that Mr. Caddle falsely represented to the Appeals Committee that he told Ms. Foreman twice that if she did not feel responsible for a charge she should plead "not guilty," when, according to Ms. Foreman, he did not explain it to her even once. (Compl. ¶ 90, ECF No. 1 at PageID 21).  Ms. Foreman also claims that Mr. Caddle falsely told the Appeals Committee that he gave her notice that she was supposed to present evidence in advance of the disciplinary hearing when she claims that he did not provide such notice. (*Id.*).

Plaintiff claims she reasonably relied on Mr. Caddle's statements to the Appeals Committee but does not say in what manner. Mr. Caddle's allegedly false statements related to communications with her that took place either before or during the disciplinary hearing, i.e., matters about which she would have personal knowledge. It is contrary to reason for Plaintiff to claim that she relied on statements that she personally knew to be false.

19

The lack of reasonable reliance alone compels dismissal of Plaintiff's fraudulent misrepresentation claim, but she also fails to allege what damages she suffered specifically as a result of Mr. Caddle's alleged misrepresentations to the Appeals Committee. Because Plaintiff could not have reasonably relied on the alleged misrepresentations, and has failed to allege any injury as a result of them, Plaintiff fails to state a claim for fraudulent misrepresentation.

## CONCLUSION

For the foregoing reasons, Defendants Rhodes College, Richard Adams, David Caddle, and Amaka MgBoh respectfully request the Court to dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted,

BURCH, PORTER & JOHNSON, PLLC

/s/ Lisa A. Krupicka
Lisa A. Krupicka (BPR #12147)
Sarah Elizabeth Stuart (BPR #35329)
Lani D. Lester (BPR#35226)
130 N. Court Avenue
Memphis, TN 38103
T: (901) 524-5000
F: (901) 524-5024
lkrupicka@bpjlaw.com
sstuart@bpjlaw.com
llester@bpjlaw.com

*Attorneys for Defendants Rhodes College, Richard Adams, David Caddle and Amaka Mgboh*